IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

S.B.,

    Plaintiff,

v.                                  CIVIL ACTION NO. 1:19-00773

DAVID R. WILSON, ET AL.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court is a motion to dismiss filed by defendant Nakamoto Group, Inc.  See ECF No. 56.  For the reasons expressed below, that motion is **GRANTED** in part and **DENIED** in part.

### I. Background

On January 13, 2014, plaintiff S.B. began serving a 70-month sentence at Federal Prison Camp Alderson ("Alderson") in Alderson, West Virginia.  See Amended Complaint at ¶ 17 (ECF No. 45).  She alleges that, while at Alderson, she was subjected to "repeated episodes of sexual abuse and sexual battery" at the hands of a prison official, former Captain Jerrod Grimes ("Grimes").  Id. at ¶ 2.  On or about December 21, 2017, Grimes resigned from Alderson.  Id. at ¶ 97.  He was later indicted and pled guilty to multiple counts of sexual abuse of a ward and

abusive sexual contact, in violation of 18 U.S.C. § 2243(b) and 2244(a)(4).  Id. at ¶ 98.

On October 23, 2019, S.B. filed her first complaint in this matter.  See ECF No. 1.  Named as defendants were Grimes, the United States of America, and numerous other employees at Alderson.  Count One of the three-count complaint alleged a violation of the Eighth Amendment against Grimes for sexual abuse, battery, and sexual harassment.  Count Two alleged a violation of the Eighth Amendment by the other prison officials named as defendants for their failure to intervene.  Count Three stated a claim for negligence against the United States under the Federal Tort Claims Act.

On October 1, 2020, the Amended Complaint was filed.  It asserted claims of negligence and breach of contract against Nakamoto Group, Inc. ("Nakamoto").  Pursuant to a contract with the Bureau of Prisons (BOP), Nakamoto audited the BOP's compliance with the Prison Rape Elimination Act ("PREA").  The specific allegations as to Nakamoto include:

> 169.  At all times relevant to this amended complaint, Nakamoto was the auditor for inspecting, monitoring and oversight of BOP compliance with PREA standards at FPC Alderson.
>
> 170.  The BOP contracted with Nakamoto to carry out inspections of FPC Alderson in accordance with the standards mandated by PREA.  Nakamoto was contractually obliged to carry out those inspections

as part of the auditing process required by PREA for the benefit of all inmates in the custody of FPC Alderson.

171. Nakamoto contractors conducted audits of FPC Alderson in 2015 and 2017.

172. Nakamoto negligently performed the auditing functions under PREA and breached its contractual and/or legal obligations as more specifically below.

173. The PREA audits conducted by Nakamoto were materially incomplete, as auditors failed to properly conduct required systematic reviews of documents held by FPC Alderson relating to sexual abuse and sexual harassment allegations and failed to properly interview inmates and/or staff that were involved in or witness to PREA violations by defendant Grimes or any other correctional officer.

174. The failure of Nakamoto to conduct a thorough audit of FPC Alderson and investigate allegations of staff sexual misconduct allowed Grimes to stay in his position and have unfettered access to inmates, including S.B., rather than facing termination from employment or removal from his duties at FPC Alderson.

* * *

185. Nakamoto failed to use reasonable care and diligence to hire, train, and supervise its auditor staff to obtain sufficient facts to support all statements, conclusions, and findings of the audits performed at FPC Alderson.

186. Nakamoto consistently failed to conduct thorough examinations of critical facility functions FPC Alderson.

187. Nakamoto failed to review appropriate records and/or failed to note discrepancies, irregularities or problems that should have been readily apparent from the well known activities of defendant Grimes and/or other staff at FPC Alderson.

188. Nakamoto generally failed to conduct its audits at FPC Alderson with the level of care imposed upon it by law and consequently breached its duty of care to the inmates there, including plaintiff in particular.

189. Some or all of Nakamoto's breaches of its duty of care to plaintiff occurred prior to defendant Grimes' sexual misconduct against plaintiff.

190. Had Nakamoto fulfilled its duty of care, defendant Grimes' sexual misconduct against plaintiff would not have occurred.

191. Nakamoto knew or should have known that a failure on its part to fulfill its auditing duty of care would result in the commencement and/or continuation of sexual misconduct perpetrated by correctional officers such as defendant Grimes against female inmates such as plaintiff.

192. As a proximate result of Nakamoto's failure to meet its duty of care, and the associated and/or consequential failure to identify and address obvious signs of endemic sexual abuse at FPC Alderson, S.B. and other female inmates at FPC Alderson sustained injuries and damages.

\* \* \*

200. S.B. at all times relevant to the allegations herein was a federal inmate and thus an individual to be protected "from prison rape."

201. S.B. as an inmate is a member of the class of persons the PREA auditing function was designed to protect.

202. The contract between Nakamoto and the BOP was made and intended for the benefit of plaintiff as a member of the class definitely and clearly within the terms of the contract.

203. Nakamoto breached the contract, including by failing to conduct appropriate and meaningful PREA audits and to make appropriate and meaningful reports

> which would have provided the BOP with the necessary information to take corrective action to not only fulfill the purpose of the PREA "to protect individuals from prison rape" but to also help fulfill their mandated duty to "provide for the safekeeping, care, . . . of all persons charged with or convicted of offenses against the united states" and to "provide for the protection . . . Of all persons charged with or convicted of offenses against the united states" under 18 U.S.C. § 4042(a)(2)-(3).
>
> 204.   As a direct and proximate result of Nakamoto's [ ] breach of the contract between Nakamoto and the BOP, S.B. was injured and damaged. . . .

Amended Complaint 31-36.

Nakamoto moved to dismiss both counts. That motion is fully briefed. Plaintiff sought leave to file a surreply, see ECF No. 67, and that motion is **GRANTED**.

## II. Standard of Review

"[A] motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989) (citation omitted) (quoting Conley v. Gibson, 355 U.S. 41, 48 (1957), and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130,

1134 (4th Cir. 1993); see also Ibarra v. United States, 120 F.3d 474, 474 (4th Cir. 1997).

In evaluating the sufficiency of a pleading, the cases of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), provide guidance. When reviewing a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted, a court must determine whether the factual allegations contained in the complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and, when accepted as true, "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (quoting Conley, 355 U.S. at 47; 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. As the Fourth Circuit has explained, "to withstand a motion to dismiss, a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 350 (4th Cir. 2013) (quoting Twombly, 550 U.S. at 570).

According to Iqbal and the interpretation given it by our appeals court,

6

> [L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes. See Iqbal, 129 S.Ct. at 1949. We also decline to consider "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n. 26 (4th Cir. 2009); see also Iqbal, 129 S. Ct. at 1951-52.
>
> Ultimately, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Facial plausibility is established once the factual content of a complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims "'across the line from conceivable to plausible.'" Id. at 1952 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).
>
> Satisfying this "context-specific" test does not require "detailed factual allegations." Id. at 1949-50 (quotations omitted). The complaint must, however, plead sufficient facts to allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." Id. at 1950. Without such "heft," id. at 1947, the plaintiff's claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with a defendant's liability," id. at 1949, fail to nudge claims "across the line from conceivable to plausible." Id. at 1951.

Nemet Chevrolet, LTD v. Consumeraffairs.com, Inc., 591 F.3d 250, 255-56 (4th Cir. 2009); see also Midgal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 326 (4th Cir. 2001) ("The presence of a few conclusory legal terms does not insulate a complaint from

dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion.").

### III. Analysis

#### A.   Breach of Contract

Citing West Virginia Code § 55-8-12, Nakamoto argues that plaintiff's third-party breach of contract claim fails under West Virginia law.  That statute provides that if a contract:

> be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise.

W. Va. Code § 55-8-12.  According to Nakamoto, its contract with the BOP was not made for plaintiff's sole benefit and, therefore, her breach of contract claim is barred as a matter of law.

In her opposition to the motion to dismiss, plaintiff maintains that her breach of contract claim is not subject to dismissal because she is bringing her claim as a representative of a class of persons (female prisoners) benefitting from the contract.  In so doing, she relies on the following passage from United Dispatch v. E.J. Albrecht Co.:

> We think a consideration of the authorities in this, as well as other, jurisdictions leads to the conclusion that a person not a party to a contract may

8

> maintain an action thereon when such contact is made
> and intended for his sole benefit; and, likewise, an
> action may be maintained if the contract is made and
> intended for the benefit of a class of persons
> definitely and clearly shown to come within the terms
> of the contract. The intent of the contracting
> parties must appear from the contract or be shown by
> necessary implication; and be in accordance with the
> parol evidence rule when the contract under
> consideration is in writing.

62 S.E.2d 289, 296 (W. Va. 1950).

Nakamoto maintains that plaintiff's argument misses the mark entirely. According to Nakamoto, even if plaintiff is representing a class of female prisoners, that class is not the sole beneficiary of Nakamoto's contract with the BOP. The BOP is the primary beneficiary of its contract with Nakamoto; therefore, plaintiff (or even a class of female prisoners that includes plaintiff) cannot be its sole beneficiary.

In her surreply, plaintiff argues for the first time that federal, not West Virginia, law controls whether she is a third-party beneficiary of the BOP/Nakamoto contract.[1] Nakamoto has not yet responded to this argument given that it was raised for the first time in a surreply.

---

[1] See ECF No. 110 at 5 ("To date, the Court has only received briefing on this issue under West Virginia law, which is not the correct standard, per Mathis, as federal common law controls the interpretation of the contract, and no other choice of law exists per the terms of the contract produced by Nakamoto.").

There appears to be some merit to plaintiff's argument. See Mathis v. GEO Group, Inc.[2], No. 2:08-CT-21-D, 2009 WL 10736631, at *18 (E.D.N.C. Nov. 9, 2009) ("Because the federal government is a party to the contract, federal common law controls the interpretation of the contract."); Chickaloon-Moose Creek Native Ass'n, Inc. v. Norton, 360 F.3d 972, 980 (9th Cir. 2004) ("Federal law governs the interpretation of contracts entered pursuant to federal law where the government is a party."); Audio Odyssey, Ltd. v. U.S., 255 F.3d 512, 520 (8th Cir. 2001) ("[F]ederal common law applies to the determination of [ ] status as a third-party beneficiary."). And, as one court recently explained, determining whether a plaintiff is a third-party beneficiary of a federal contract requires consideration of several factors:

> Federal common law governs civil liabilities arising out of a private contractor's performance of federal procurement contracts. See Sec'y of State for Def. v. Trimble Navigation Ltd., 484 F.3d 700, 705-06 (4th Cir. 2007) (citing Boyle v. United Techs. Corp., 487 U.S. 500, 504-05 (1988)). To qualify as a third-party beneficiary under federal common law, a plaintiff must show that "the contract reflects the express or implied intention of the parties to benefit the third party." Trimble, 484 F.3d at 706 (internal quotations omitted). "The intent of the parties to the contract is therefore the cornerstone of a claim for third-party beneficiary status." Flexfab, L.L.C. v. United

---

[2] Plaintiff erroneously contends that Mathis is a case from the United States Court of Appeals for the Fourth Circuit. See ECF No. 110 at 4-5.

10

States, 424 F.3d 1254, 1259 (Fed. Cir. 2005). As a result, courts must examine the "precise language of the contract for a clear intent to rebut the presumption that the [third parties] are merely incidental beneficiaries" who lack standing to sue for breach of contract. GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat'l Ass'n, 671 F.3d 1027, 1033–34 (9th Cir. 2012) (applying federal common law) (internal quotations omitted; alterations in original). The moving party can accomplish this by showing that "the [government] contracting officer [was] put on notice, by either the contract language or the attendant circumstances, of the relationship between prime contractor and the third-party . . . so that an intent to benefit the third party is fairly attributable to the contracting officer." Flexfab, 424 F.3d at 1263. This is true even when the putative third-party beneficiary is seeking to recover from the private contractor and not the government. See Trimble, 484 F.3d at 707–08 (evaluating the intent of the government to decide whether a third-party could bring a breach of contract suit against the contractor).

Third-party beneficiary status is exceptional in the law and "should not be granted liberally," Flexfab, 424 F.3d at 1259, and courts must take a stringent approach to recognizing such exceptional status, see Trimble, 484 F.3d at 709 (recognizing that inquiry into third-party beneficiary status is ordinarily not ripe for resolution in the context of a Rule 12 motion, but noting that where the relevant documents are properly before the court and "the contracts in question were executed under a federal statutory scheme," resolution of the third-party beneficiary issue is proper at the motion to dismiss stage). Moreover, third-party beneficiary status is particularly difficult to prove in connection with a federal government contract. See Flexfab, 424 F.3d at 1260–63 (explaining the unique context of government contracts and noting that, while limited exceptions to the requirement of privity as a prerequisite for a breach of contract claim exist, "the government does not lightly consent to suit").

In analyzing whether a litigant possesses rights to enforce a contract as a third-party beneficiary, in addition to probing the intent of the contractor and the U.S. government as evidenced by contractual language, courts also look to whether granting third-party beneficiary status would frustrate the intent behind an underlying federal statutory scheme. See, e.g., Trimble, 484 F.3d at 706-07 (affirming dismissal on third-party beneficiary grounds, where recognizing the plaintiff's third-party beneficiary status "would be contrary to the intent and structure of the [Arms Export Control Act]").

In Trimble, the United Kingdom brought an action against Trimble, a domestic contractor who manufactured chips for use in GPS technology, alleging that Trimble breached its contract with the United States and that this breach caused harm to the United Kingdom as a third-party beneficiary of the Trimble-United States contract. See id. at 705. Pursuant to the Foreign Military Sales ("FMS") program, as authorized by the Arms Export Control Act ("AECA"), the United Kingdom had its own contract with the United States, under which the United Kingdom agreed to purchase Trimble's chips. Id. at 703. The agreement between the United States and United Kingdom included a clause, providing that claims relating to product discrepancies must be raised with the United States and channeled through a certain administrative procedure known as the Supply Discrepancy Report ("SDR") process. Id. at 704, 708. The SDR process did not contemplate litigation by the FMS purchaser against the United States, even in the event that the United States failed to resolve the issue with the domestic contractor. Id. Even before considering whether contractual provisions evidenced an intent of the United States and Trimble to convey third-party beneficiary status on the United Kingdom, and they did not, the court began its analysis with the AECA statutory scheme. The court found that implying a direct relationship between the United Kingdom and Trimble would be "contrary" to the method of purchase contemplated by the AECA. See id. at 707 ("To recognize such a right of action would allow the foreign purchaser to hold the contractor directly

12

> liable for the purchased goods, a level of accountability" that was not contemplated by the FMS transaction). In short, "any recognition of third-party rights in [the United Kingdom] would be an end-run around the AECA and is prohibited." Id. Accordingly, the Trimble court held that the United Kingdom was a mere incidental beneficiary to the Trimble-United States contract and could not sue to enforce it. Id.

Hencely v. Fluor Corp., Civil Action No. 6:19-00489-BHH, 2021 WL 3604781, at *5-6 (D.S.C. Aug. 13, 2021). Ultimately, the Hencely court granted defendant's motion for judgment on the pleadings, finding that plaintiff had "not adequately pled third-party beneficiary status[.]" Id. at *11.

Given the difficulty in proving third-party beneficiary status in connection with federal government contracts, see Mathis, 2009 WL 10736631, at *18 ("[P]laintiff bears an exceptional burden to prove that he (a nonsignatory to the federal government contract) is entitled to recover for breach of the government contract between the BOP and GEO under a third-party beneficiary theory.") (internal quotation marks omitted), the court is doubtful that plaintiff will ultimately prevail on her claim. However, the only briefing and argument on the breach of contract issue discusses state law and Nakamoto seeks dismissal thereunder. Given the foregoing discussion, the court is not convinced that Nakamoto's motion is well-taken. Therefore, insofar as Nakamoto seeks dismissal of the breach of

contract claim pursuant to West Virginia Code § 55-8-12, the motion is **DENIED** without prejudice. If it chooses, Nakamoto may renew its motion to dismiss and explain (1) why federal common law does not control the issue of third-party beneficiary status; or (2) why dismissal is appropriate under the federal common law.

### B. Negligence

The gist of the action doctrine seeks "to prevent the recasting of a contract claim as a tort claim." Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP, 746 S.E.2d 568, 577 (2013). "Succinctly stated, whether a tort claim can coexist with a contract claim is determined by examining whether the parties' obligations are defined by the terms of the contract." Id. This doctrine will bar an action in tort if a party establishes any of the following:

> (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

Id. (quoting Star v. Rosenthal, 884 F. Supp.2d 319, 328–29 (E.D. Pa. 2012)). "The 'gist of the action' doctrine requires plaintiffs seeking relief in tort to identify a non-contractual

14

duty breached by the alleged tortfeasor." Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc., 783 F.3d 976, 980 (4th Cir. 2015).

In arguing that the gist of the action doctrine does not bar her negligence claim, plaintiff maintains that her negligence cause of action is grounded in "the federal regulations comprising the PREA audit standards." ECF No. 101 at 8. Plaintiff admits that her "entire negligence claim is based on Nakamoto allegedly failing to meet the PREA audit standards." Id. at 9. However, plaintiff conveniently ignores the fact that, but for the contract, Nakamato has no duty to comply with PREA audit standards. In other words, Nakamoto's alleged duties under the federal regulations arise because of the contract and not independent of it. In rejecting a similar argument, Judge Chambers explained why plaintiff's argument fails:

> Plaintiffs argue their claim of negligent investigation arises under the statutory duties imposed under the UTPA, not their contracts. Thus, Plaintiffs insist the "gist of the action" doctrine does not apply. However, even if it does apply, Plaintiffs additionally argue they are permitted to allege both tort and contract claims in the alternative. . . .
>
> Although there are instances in which a tort claim may arise apart from the parties' contractual relationship, the problem with Plaintiffs' argument in this case is that, but for the existence of the insurance contracts between Nationwide and Plaintiffs,

> Nationwide would have no obligation under the UTPA to investigate the claims and provide a fair determination of coverage and damages.  Nationwide's duty to investigate the claim arises solely from the fact that the parties have a contractual relationship.  Without the contract, Nationwide would have no duty to investigate.  In other words, Plaintiffs' negligent investigation claim is dependent upon the existence of the contract and, thus, falls with the "gist of the action" doctrine.

Gue v. Nationwide Ins. Co. of America, CIVIL ACTION NO. 3:21-0123, at *6 (S.D.W. Va. Aug. 12, 2021) (Chambers, J.).  Indeed, plaintiff admits that Nakamoto's duties under the federal regulations arise out of the contract.  See ECF No. 101 at 13 ("For Nakamoto the test is whether it met the standards contained in a number of specific requirements outlined in over 50 pages in 28 C.F.R. § 115.401 which are part of the contract. . . .") (emphasis added).

Based upon the foregoing, the court grants Nakamoto's motion to dismiss plaintiff's negligence claim pursuant to the gist of the action doctrine.[3]

---

[3] Given the court's conclusion that the plaintiff's negligence claim is barred by the gist of the action, it does not reach Nakamoto's alternative argument that the negligence claim is barred by the statute of limitations.

### IV. Conclusion

Nakamoto's motion to dismiss the negligence count is **GRANTED**.  The motion to dismiss the breach of contract claim is **DENIED** without prejudice.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and to any unrepresented party.

**IT IS SO ORDERED** this 30th day of September, 2021.

ENTER:

David A. Faber
Senior United States District Judge